```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
|                               Plaintiff,   ) | |
| v.                               ) | No.11 CR 203-3 |
| LESLIE WILLIAMS-OGLETREE,        ) | |
|                               Defendant.   ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

The government has filed various motions in limine in this case pertaining to Defendant Leslie Williams-Ogletree in advance of the January 14, 2013 jury trial. For the reasons discussed below, the government's motions are granted in part and denied in part without prejudice.

## BACKGROUND

On March 15, 2011, a federal grand jury returned an Indictment against Defendants Robtrel I. White, Larryl White, and Leslie Williams-Ogletree. (R. 1, Indict.) Count One of the Indictment charges all three Defendants with one count of conspiracy to file false claims upon an agency of the United States, in violation of 18 U.S.C. § 286. Counts Two though Six of the Indictment charge Defendants Williams-Ogletree and Robtrel White with five counts of filing false claims upon an agency of the United States, in violation of 18 U.S.C. § 287. Defendants Robtrel White and Larryl White have pleaded guilty. Defendant Leslie Williams-Ogletree has pleaded not guilty and is proceeding to trial on January 14, 2013.

Count One of the Indictment charges that from approximately late 2005 until August 26, 2008, all three Defendants conspired to defraud the Internal Revenue Service ("IRS") by filing false claims for individual tax refunds. (R. 1, Indict., "Count One" ¶ 1.) At all material times, Defendant Williams-Ogletree owned and operated a tax preparation business in Chicago, Illinois called LKJ Tax and Financial Service ("LKJ"). (*Id.* ¶ 1(d).) LKJ applied for and obtained from the IRS an electronic filing identification number ("EFIN") that enabled LKJ to electronically file individual income tax returns. (*Id.*)

2005 Tax Year. As part of the conspiracy relating to the 2005 tax year, the Indictment alleges that Defendant Williams-Ogletree, by February of 2006, provided the EFIN to Defendant Robtrel I. White to allow him to "file with the IRS fraudulent individual income tax returns." (*Id.* ¶ 3.) From late 2005 and continuing into 2006, Defendants Robtrel I. White and Larryl White obtained personal identifying information from approximately 200 individuals by "promising cash payments to those individuals in exchange for such information." (*Id.* ¶ 5.) Using this information and LKJ's EFIN, Defendants Williams-Ogletree and Robtrel White filed approximately 200 false tax returns for the year 2005, claiming total tax refunds in excess of $830,000. (*Id.* ¶ 8.) Defendants Williams-Ogletree and Robtrel White obtained refund anticipation loans ("RALs") for approximately 163 of the false 2005 Returns from Chase Bank, and either cashed or deposited the loan proceeds into bank accounts. (*Id.* ¶¶ 9-13.) The IRS incurred a loss of at least approximately $650,000 as a result of Defendants filing of the false 2005 Returns.

2006 Tax Year. As part of the conspiracy relating to the 2006 tax year, Defendant Robtrel I. White obtained personal identifying information of 663 individuals. (*Id.* ¶¶ 14-18.)

He used a new EFIN to electronically file fraudulent tax returns with the IRS based on their personal identifying information, claiming total tax refunds in excess of $2,300,000. (*Id.* ¶ 20.) Defendant Robtrel I. White then obtained RALs and deposited the loan proceeds into bank accounts. (*Id.* ¶¶ 20-24.)

2007 Tax Year. As part of the conspiracy relating to the 2007 tax year, Defendant Robtrel I. White fraudulently obtained an EFIN by using personal information of three other individuals, without their knowledge. (*Id.* ¶ 25.) He then obtained personal identifying information for 523 individuals that he used to electronically file hundreds of fraudulent tax returns that together claimed tax refunds in excess of $690,000. (*Id.* ¶¶ 25-30.) In connection with these requests for tax refunds, Defendant Larryl White in or about March of 2008 incorporated with the Illinois Secretary of State an entity called LW Financial. (*Id.* ¶ 31.) Defendant Larryl White then, in the name of LW Financial, opened two bank accounts into which the IRS would later directly deposit tax refunds. (*Id.* ¶¶ 31-36.) Defendant Robtrel I. White additionally opened another bank account into which the IRS also directed tax refunds. (*Id.* ¶ 34.)

Overt Acts Regarding Leslie Williams-Ogletree. The Indictment specifically alleges twenty overt acts in furtherance of the charged conspiracy. (*Id.* ¶¶ 37-40.) Regarding overt acts one through five, the Indictment alleges that Defendants Robtrel I. White, Larryl White, and Leslie Williams-Ogletree "filed and caused to be filed" five specifically identified fraudulent tax returns with the IRS for the 2005 tax year. (*Id.* ¶ 37.) For overt acts five through twelve, the Indictment alleges that Defendant Robtrel I. White "filed and caused to be filed" seven specifically identified fraudulent tax returns with the IRS for the 2006 tax year. (*Id.* ¶ 38.)

3

Counts Two through Six of the Indictment charge Defendants Robtrel I. White and Leslie Williams-Ogletree with presenting five specifically identified fraudulent tax refund requests to the IRS for the 2005 tax year. It charges that they submitted these fraudulent returns in the name of Taxpayer A.S., Taxpayer A. St., Taxpayer V. St., Taxpayer C.W., and Taxpayer K.T.

**ANALYSIS**

**I.     Procedural Motions in Limine**

**A.     Discovery Requests or Comments Regarding Discovery**

The government seeks to preclude counsel from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise raising discovery issues in the presence of the jury. Defendant does not object to this motion. Accordingly, the motion is granted. If Defendant has any discovery issues during the trial, she must raise them with the Court outside the presence of the jury.

**B.     Prior Notice Concerning Rule 608(b) Impeachment**

The government next moves to preclude the parties from introducing evidence under Rule 608(b) except upon prior notice to the Court and the other parties outside the presence of the jury. Rule 608(b) provides that specific instances of conduct bearing on a witness's character for truthfulness "other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." Fed. R. Evid. 608(b). Under Rule 608(b), however, specific instances of conduct bearing upon truthfulness "may . . . be inquired into on cross-examination" in the discretion of the court.

Defendant objects to this motion on the grounds that it seeks a preview of Defendant's cross examination. The Court denies this motion without prejudice. The Court assumes all

4

counsel will comply with the Federal Rules of Evidence. If counsel abuses this Rule, however, the Court will require advance notice outside of the presence of the jury.

**II.     Motions in Limine Concerning the Admission of Evidence**

   **A.     Permission to Recall the Case Agent**

The government has requested permission to recall Special Agent Carissa Lyons Kane of the Internal Revenue Service, the case agent in this case, in order to present the evidence in an orderly fashion to the jury. The government represents that it will recall Agent Kane two and possibly three times in order to present the evidence in a logical and coherent manner. The motion is granted.

The Court has discretion regarding the presentation of evidence during trial. Fed. R. Evid. 611(a). *See United States v. Conley*, 826 F.2d 551, 559 (7th Cir. 1987) ("The trial judge has wide discretion in the admission of evidence"). Indeed, "[p]ermitting the recall of a witness is within the sound discretion of the district court." *United States v. Dent*, 984 F.2d 1453, 1463 (7th Cir. 1993). The Court grants this motion in order to permit the government to present the evidence to the jury in a coherent manner. Such a presentation will assist the jury in understanding the evidence. Defendant, of course, will have the opportunity to cross examine Agent Kane each time the agent testifies. The cross examination, however, will be limited to the scope of the agent's direct testimony.

   **B.     Defendant's Tax Returns and Return Information**

The government seeks to admit Defendant's tax returns for the calendar years 2004, 2005, 2006, and 2007 as direct evidence of her guilt. The Court agrees.

The government acknowledges that Defendant's own tax returns are not among the numerous allegedly fraudulent income tax returns charged in the Indictment as part of the scheme to defraud. Instead, the government seeks to introduce these returns as direct evidence of her guilt. Specifically, the government argues that 1) her tax returns from both before and after the 2006 tax year provide a baseline of LKJ's general business level against which the "mass income increase of 2006 stands in stark contrast; 2) her 2006 tax return directly connects her to the fraud activity; and 3) her failure to timely file a tax return for 2006 is direct evidence of her consciousness of guilt.

Defendant claims that the returns are not relevant, although she fails to address the government's specific arguments regarding the relevance of the returns. The returns are indeed relevant. They demonstrate Defendant's income from LKJ and her ownership and control of that entity — an entity which is at the heart of the charged conduct. LKJ was a sole proprietorship and thus Defendant had to report income that LKJ received as business income on Schedule C of her individual income tax returns. In addition, Defendant's tax returns reflect the significant change in income LKJ received in 2006 – the year Defendant Williams-Ogletree allegedly engaged in the vast majority of the charged criminal conduct. Specifically, the indictment charges that she and her co-defendants used LKJ's electronic filing identification number and filed approximately 200 false tax returns in 2006 for the year 2005, claiming total tax refunds in excess of $830,000. Defendant's 2006 tax return reflects gross receipts from LKJ of $105,000 compared to $9,406 in 2004, $18,000 in 2005, and $37,772 in 2007. This increase in gross receipts is evidence of her involvement in the fraud in 2006. Furthermore, her tax return for 2006 reflects the income that she received from the alleged scheme and provides a direct

6

connection to the charged activity.

Finally, Defendant failed to timely file her 2006 tax return. Instead of filing it on April 15, 2007, she signed her 2006 income tax return purportedly on February 1, 2008, and the IRS received a hard copy of it on April 12, 2008. Under Rule 404(b), Defendant's late filing of her 2006 tax return is evidence of her knowledge that the income she received came from the fraudulent scheme and her intent. The late filing is not directed toward Defendant's propensity, the evidence is close enough in time to be relevant – it is directly during the charged scheme, and the evidence is sufficient to support a jury finding that she filed it late. Fed. R. Evid. 404(b).

The admission of this evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. Fed. R. Evid. 403. *See generally United States v. Taylor*, __ F.3d __, 2012 WL 5971208 (7th Cir. Nov. 30, 2012). Defendant does not articulate how the admission of this evidence is substantially outweighed by the danger of unfair prejudice. Indeed, the government has represented that it does not intend to argue that Defendant's 2004, 2005, or 2007 returns contain any errors. While her 2006 return reflects a different gross receipt figure than her bank records, the government does not intend to argue that this difference was intentional or fraudulent. If Defendant believes that a limiting instruction is appropriate, she can raise it with the Court at the final pretrial conference.

Defendant further argues that "there could be competing inferences" as to why she did not file her tax return for the tax year ending December 31, 2006. Defendant claims, without citing any law, that the introduction of this evidence will force her to testify to "explain her own tax filings which are not part of the indictment," in violation of her constitutional right against

7

self incrimination. She further argues that the admission of the returns will shift the burden of proof to her. The introduction of this relevant evidence will not compel Defendant to testify or shift the burden of proof to her. The returns are prior statements by Defendant and the government's admission of such prior statements does not compel her testimony. Moreover, the Court will clearly instruct the jury that the government bears the burden of proof throughout trial. The government will introduce these returns as part of its burden.

## III. Other Motions in Limine

### A. Motions regarding Attempted Impeachment of Robtrel White

The government moves to preclude Defendant from attempting to impeach Robtrel White for (1) past arrests that did not result in a formal charge or conviction; (2) an arrest for an alleged criminal sexual assault that led to the seizure of evidence used in this case; and (3) two prior convictions for possession of controlled substances that are more than 10 years old.

#### 1. Prior Arrests

The government first generally moves to preclude Defendant from cross examining witnesses with their prior arrests pursuant to Rules 608 and 609. While arrests alone typically are not appropriate cross examination under Rule 609, they may be appropriate under Rule 608(b) if they are probative of truthfulness. The government, however, has not provided any details of the prior arrests other than one for criminal sexual assault addressed below, thus the Court cannot determine the applicability of Rule 608. The parties should be prepared to discuss this issue at the final pretrial conference.

### 2. Arrest for Alleged Criminal Sexual Assault

In June 2007, a female guest at Robtrel White's apartment in River Forest, Illinois, alleged that Robtrel White and co-conspirator A committed a violent criminal sexual assault against her. The female filed a complaint against Robtrel White with the River Forest Police Department ("RFPD"). Based on the complaint, the RFPD obtained a warrant for Robtrel White's arrest and went to his apartment on June 16, 2007 to execute that warrant. While at his apartment, Robtrel White agreed to and executed a consent search permitting the RFPD to, among other things, search his apartment. During the search, the RFPD officers observed and seized the computers and tax files that Robtrel White had relocated to his apartment and that were used in connection with his criminal conduct in this case. The parties do not dispute that Robtrel White was never indicted or convicted of criminal sexual assault in connection with the female guest's complaint in June of 2007.

The government seeks to preclude Defendant from inquiring into this event on cross examination. Because the sexual assault allegations do not bear upon Robtrel White's truthfulness, Defendant may not inquire into them on cross examination. Even Defendant appears to concede in her response that these allegations do not bear on Robtrel White's truthfulness. Instead, Defendant argues that "it is important for the jury to hear how and why White was caught, that he was hiding his crime and not volunteering to be a witness against anybody." Defendant is free to elicit that Robtrel White consented to a search of his apartment by the RFPD officers. Defendant may not, however, elicit that the RFPD had a warrant for Robtrel White's arrest or any of the details of the underlying alleged sexual assault or the reason they were at White's apartment.

Even if Rule 608(b) permitted the cross examination of Robtrel White with this arrest information, the Court would nonetheless preclude it under Rule 403. Any potential probative value this information has is substantially outweighed by the danger of unfair prejudice – namely, that the jury will be offended by and unduly impacted by the violent and sexual nature of the underlying arrest allegations, especially because no charge or conviction resulted from them.

### 3. Prior Drug Convictions that are More than 10 Years Old

Federal Rule of Evidence 609 "governs the admissibility of a witness's prior convictions for impeachment purposes," *United States v. Rogers*, 542 F.3d 197, 200 (7th Cir. 2008), and provides in relevant part that:

> evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year under the law under which the witness was convicted] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused. . . . Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Fed. R. Evid. 609(a)(1), (b). The purpose of Rule 609 is "to ensure that 'convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.'" *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004). The ten-year clock "starts at the witness's release from any physical confinement, or in the absence of confinement, the date of conviction," and "the end date of the time limit for impeaching convictions is the start of the trial at which the witness is testifying." *Rogers*, 542 F.3d at 201. "'[C]onfinement' for purposes of the ten-year time limit in Rule 609(b) does not include periods of probation or parole." *Id.*

Generally, "'the details of the prior conviction should not be exposed to the jury.'" *United States v. Douglas*, 408 F.3d 922, 929 (7th Cir. 2005) (quoting *United States v. White*, 222 F.3d 363, 370 (7th Cir. 2000), with internal quotation from *White* omitted). As such, even where a prior conviction is admissible, the government may not "harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case.'" *United States v. Smith*, 454 F.3d 707, 716 (7th Cir. 2006) (quoting *Campbell v. Greer*, 831 F.2d 700, 716 (7th Cir. 1987)). The Rule, rather, "restricts the introducing party to 'identifying the particular felony charged, the date, and the disposition of a prior conviction.'" *United States v. Barnhart*, 559 F.3d 737, 747 (7th Cir. 2010) (quoting *Smith*, 454 F.3d at 716).

Convictions that are ten years old or younger, even if only by a matter of weeks, are admissible if their probative value outweighs their prejudicial effect. *See United States v. Jackson*, 546 F.3d 801, 819 (7th Cir. 2008) (noting that "[a]ny perception of arbitrariness [regarding the ten-year threshold] is the inevitable result of a rule that conditions the admissibility of evidence on its age"). Convictions that are more than ten years old are not per se inadmissible but are subject, rather, to "an asymmetrical balancing test, one that requires the probative value of a prior conviction to *substantially* outweigh the prejudice caused by its admission into evidence." *Rogers*, 542 F.3d at 201 (emphasis in original); *see also Jackson*, 546 F.3d at 819; Fed. R. Evid. 609(b)(1). Pursuant to this standard, "impeachment by a conviction falling outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances." *Rogers*, 542 F.3d at 201.

The Seventh Circuit teaches that in assessing a prior conviction's probative value and prejudicial effect, courts should consider the following to guide their admissibility decision: "'(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.'" *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005) (quoting *Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002)); *see also United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004).

Here, the government seeks to preclude Defendant from cross examining Robtrel White with two prior drug possession convictions. The first conviction for possession of a controlled substance occurred on approximately January 14, 1997 when White was 18 years old. White received a sentence of 24 months probation. The second conviction for possession of cannabis took place on approximately July 6, 1999, and White received a sentence of 30 months of probation. Because probation does not constitute "confinement imposed for that conviction," both of these convictions are more than ten years old for purposes of Rule 609. The Court finds that the probative value of these prior drug possession convictions does not substantially outweigh the prejudicial effect. Both convictions occurred over ten years ago, both involved drug possession and not crimes of dishonesty, and both occurred before White was 21. Although White's credibility will be important at trial, Defendant is free to cross examine him about his April 2004 conviction for possession of a stolen motor vehicle and his conviction for the conspiracy charged in this case. *See United States v. Heath*, 447 F.3d 535, 539 (7th Cir. 2006) (probative value of convictions over 10 years minimal where witness impeached with

convictions within 10 year period). In addition, Defendant may cross examine Robtrel White about his prior use of alias names when dealing with law enforcement in the past – although she may not elicit that he used them in connection with the above convictions or any arrests that did not result in a conviction.

> **B.** **Forms of Argument or Evidence Designed to Elicit Jury Nullification**

The government seeks to preclude Defendant from arguing or presenting evidence designed to nullify the jury, including arguments or questions 1) regarding potential penalties faced by Defendant; 2) regarding the government's motivation for investigating or prosecuting the case; 3) concerning allegations of governmental misconduct or "outrageous government conduct," and 4) concerning the "Golden Rule." The Seventh Circuit has described jury nullification as "a practice that is improper." *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification is not to be positively sanctioned by instructions, but is to be viewed as an aberration under our system.") (citations and quotations omitted). The Seventh Circuit also has made clear that "the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored." *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Defendant has not objected to this aspect of the motion. The Court grants it.

> **C.** **Evidence, Argument, Questioning and Commentary Regarding Lawfulness and Non-Corrupt Conduct**

The government also moves in limine to exclude all evidence of Defendant's lawful behavior, except reputation or opinion evidence offered within the limitations of Federal Rule of Evidence 405(a). Specifically, the government seeks to preclude Defendant from arguing that her filing of some legitimate tax returns establishes that she must not have acted unlawfully as

13

charged in the Indictment. Defendant acknowledges that "simply because she filed some legitimate returns does not create an inference that she must not have been acting in a willful manner when filing returns alleged in this case." The government's motion is therefore denied without prejudice. Defendant contends, however, that "there are different ways to view the evidence in this case." If Defendant seeks to introduce evidence of "good acts" or lawful behavior, she must raise it in advance with the Court.

## CONCLUSION

For the reasons discussed above, the government's motions in limine are granted in part and denied in part without prejudice.

Dated: January 4, 2013                                    ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge